UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL RILES,                          :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :     Case No. 3:10-cv-652 (RNC)
                                       :
DANIEL BANNISH, ET AL.,                :
                                       :
        Defendants.                    :

RULING AND ORDER

Plaintiff, an inmate at Northern Correctional Institution, brings this action pursuant to 42 U.S.C. § 1983 against three employees of the Department of Correction – Correctional Officer Michael Blue, Dr. Carson Wright, and Dr. Mark Buchanan – all in their individual capacities.  Plaintiff claims that Blue used excessive force resulting in injuries to plaintiff's nose and that Drs. Wright and Dr. Buchanan acted with deliberate indifference in failing to properly treat the injuries. Defendants have moved for summary judgment on all three claims. For the reasons that follow, the motion is granted.

I.  Background

The parties' submissions show the following.  On March 17, 2008, Correctional Officer Blue was escorting plaintiff to a court hearing.  While they were in a hallway outside the medical unit at Northern, an altercation occurred between them.  The parties dispute what happened during the altercation, but it

1

ended with plaintiff on the ground surrounded by other
correctional officers.

Immediately after the incident, medical staff reported that
plaintiff's injuries included a bloody nose and slight swelling
of the nose.  Several days later, plaintiff was treated by Dr.
Wright for complaints of nasal pain.  Dr. Wright ordered x-rays,
which showed fractures of the left and right nasal bone.  No
further medical treatment was provided at that time.

In June 2008, plaintiff reported that he was experiencing
problems with his senses of taste and smell.  The next month, he
began complaining of frequent nosebleeds.  Plaintiff was seen by
Dr. Wright on multiple occasions regarding these issues.  Dr.
Wright submitted several requests to the Utilization and Review
Committee ("URC") for plaintiff to be seen by an outside ear,
nose, and throat ("ENT") specialist.  Dr. Buchanan was serving as
the head of the URC at the time that Dr. Wright submitted his
requests.  All of Dr. Wright's requests to refer plaintiff to an
ENT specialist were denied by the URC.

II. <u>Discussion</u>

A. <u>Excessive Force</u>

Plaintiff alleges that Correctional Officer Blue used
excessive force in the altercation on March 17, 2008, by throwing
plaintiff against the wall, pinning him to the floor, and then
punching him in the face.  Blue asserts the affirmative defense

2

that plaintiff is barred from bringing this action because he has not exhausted his administrative remedies under the prison facility's inmate grievance procedures.  I agree that plaintiff has not properly exhausted available administrative remedies.  Because plaintiff's failure to exhaust is not excused, summary judgment on this claim is granted in favor of Blue.[1]

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), inmates must exhaust administrative remedies before seeking relief in federal court for "all inmate suits about prison life," including suits that allege excessive force.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  "Proper exhaustion" under the statute requires "'using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)).  Thus, informally "alerting" prison officials about the "nature of the wrong for which redress is sought" does not constitute sufficient exhaustion under the PLRA.  Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007).  Instead, prisoners must "complete the administrative review process in accordance with the applicable procedural rules," and those rules are "defined

---

[1] Defendant Blue contends that summary judgment is also appropriate because plaintiff has not raised a triable issue of fact and that qualified immunity applies.  I do not address these arguments because defendant prevails on his affirmative defense that plaintiff has failed to exhaust administrative remedies.

not by the PLRA, but by the prison grievance process itself." Jones v. Block, 549 U.S. 199, 218 (2007).  The PLRA's requirement that prisoners must pursue grievance procedures before bringing suit was intended to "reduce the number of prisoner suits by affording corrections officials time and opportunity to address complaints internally."  Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir. 2006).  Exhaustion may be excused if the plaintiff shows that: (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped by their own actions from raising, the affirmative defense of non-exhaustion; or (3) special circumstances exist that justify the prisoner's failure to comply with administrative procedural requirements.  Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).[2]

To evaluate whether plaintiff has properly exhausted administrative remedies for his excessive force claim, I look to the grievance procedures in place at Northern Correctional

---

[2] The Second Circuit has questioned how, if at all, this three-part inquiry is affected by the Supreme Court's decision in Woodford.  See Amador v. Andrews, 655 F.3d 89, 102-03 (2d Cir. 2011).  As described below, plaintiff's claims regarding estoppel and special circumstances fail even under pre-Woodford case law, so any potential narrowing of those exceptions to the exhaustion requirement is of no issue here.  See, e.g., Amador, 655 F.3d at 102-03 (declining to reach the issue because plaintiff failed to establish an excuse for her failure to exhaust even under pre-Woodford case law); Ruggiero v. County of Orange 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect Woodford has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-Woodford case law.").

Institution and whether plaintiff has complied with those procedures.  See Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).  The parties agree that Department of Correction Administrative Directive 9.6, submitted as defendants' exhibit 50, establishes the grievance process that applies to plaintiff's claim.  According to that directive, an inmate must initiate the administrative process by seeking informal resolution, which requires submitting a written request on an Inmate Request Form. Administrative Directive 9.6 § 6, Defs.' Mot. Summ. J., Ex. 50, ECF No. 121-52, at 4.  If the inmate is not satisfied with the response to the written request, or if he or she does not receive a response within 15 days, the inmate may file a Level 1 grievance.  Id. at 5.  A Level 1 grievance must include either the Inmate Request Form that the inmate originally submitted, or an explanation for why that form is not attached.  Id.  The grievance must be filed within 30 calendar days of the occurrence of the cause of the grievance.  Id.

    In this case, the parties dispute the number and timing of the grievances filed by plaintiff related to the March 17, 2008, altercation.  However, the parties agree that plaintiff submitted a Level 1 Grievance on March 23, 2008.  Both parties have submitted a copy of that grievance in connection with their summary judgment filings.  Defs.' Mot. Summ. J., Ex. 51, ECF No 121-53; Pl.'s Opp'n Summ. J., Ex. C-1, ECF No. 133-4, at 9.  The

contents of this grievance as well as plaintiff's admissions
demonstrate that plaintiff has not properly exhausted his
administrative remedies.

Specifically, plaintiff does not contest that he did not
submit an Inmate Request Form regarding informal resolution of
his claim prior to submitting the March 23 grievance.  Pl.'s
Aff., Pl.'s Opp'n Summ. J., Ex. C, ECF No. 133-4, at 2.  The
March 23 grievance does not include an Inmate Request Form, nor
does it include an explanation for why that form is not attached.
Even if plaintiff had submitted the form, he would not be
authorized to file a grievance based on not receiving a response
to his request until 15 calendar days had passed.  Because the
incident took place on March 17 and the grievance was filed on
March 23, the grievance would have been premature.

Based on these undisputed facts, plaintiff did not properly
exhaust the administrative remedies available to him because he
did not initiate the process by submitting an Inmate Request Form
seeking informal resolution, and his Level 1 grievance was
procedurally deficient.[3]  Plaintiff points out that he made a
good faith attempt to start over several months later by
submitting an informal resolution request in July and then filing

---

[3] The parties dispute other aspects of the grievance
procedures, plaintiff's submissions, and exhaustion.  Because I
conclude that plaintiff did not properly initiate the grievance
process and that his Level 1 grievance was procedurally
deficient, it is unnecessary to examine these other arguments.

another Level 1 grievance in August.  But Level 1 grievances must be filed within 30 days of the underlying occurrence.  Thus, even accepting plaintiff's version of the facts, he has not properly exhausted administrative remedies regarding his excessive force claim.  See Wilson v. McKenna, 3:12-CV-1581(VLB), 2015 WL 5455634, at *4 (D. Conn. Sept. 15, 2015) (granting summary judgement based on non-exhaustion because plaintiff did not comply with Administrative Directive 9.6 when he submitted an Inmate Request Form more than 30 days after incident occurred); Francis v. United States, 3:10-CV-1474(AWT), 2011 WL 3563146, at *4 (D. Conn. Aug. 12, 2011) (holding that plaintiff failed to exhaust administrative remedies because she submitted her administrative remedy request after the deadline had passed).

Having determined plaintiff did not properly exhaust administrative remedies, I now turn to whether this failure to exhaust is excused based on the three-part framework in Hemphill. 380 F.3d 680, 686 (2d Cir. 2004).  Plaintiff argues that his submissions qualify under two of the Hemphill prongs – estoppel and special circumstances.  I disagree and conclude plaintiff's failure to exhaust is not excused.

Regarding estoppel, plaintiff claims that any failure to exhaust should be excused because prison officials interfered with his attempt to follow the grievance process.  Estoppel can justify non-exhaustion if defendants took "affirmative action to

prevent [the prisoner] from availing himself of grievance procedures." Ruggiero, 467 F.3d at 178.  Plaintiff claims that estoppel applies here because prison officials misled him by: 1) never informing him that his grievances were procedurally deficient, and 2) checking a box on a later grievance that indicated he had exhausted administrative remedies.

Neither of these arguments establishes that defendants are estopped from asserting the affirmative defense of non-exhaustion.  Plaintiff's claims do not rise to the level of active interference with the grievance process that has been found to constitute estoppel.  See Ruggiero, 467 F.3d at 178 (noting that estoppel cases involved "beatings," "threats of retaliation for filing a grievance," and "attempt[s] to file a grievance" that were denied by prison officials); Morales v. Dzurenda, 3:07-CV-1220(CFD), 2009 WL 8695525, at *5 (D. Conn. Sept. 8, 2009) (rejecting estoppel argument because plaintiff did not allege or show that defendants took "any affirmative steps" to prevent him from appealing the denial of a grievance). Furthermore, plaintiff does not cite any case law to support the proposition that PLRA exhaustion is excused when prison officials fail to inform an inmate that his or her grievances were insufficient.  By contrast, as discussed above, the law is clear that the PLRA requires proper exhaustion in order to give prison officials the chance to address complaints internally.

Plaintiff's grievance was procedurally deficient when it was filed, and he cannot cure that deficiency based on how prison officials did or did not respond.

Plaintiff's second argument regarding a response to a later grievance that indicated he had exhausted his administrative remedies is similarly unavailing.  Included in his opposition to summary judgment is a copy of a grievance he filed on September 16, 2008.  Pl.'s Opp'n Summ. J., Ex. C-5, ECF No. 133-4.  This document indicates that the underlying grievance was rejected as untimely because it was filed more than 30 days after the March 17, 2008, incident.  A check mark is written in the box stating, "You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered."  This response to plaintiff's grievance cannot be said to have misled him such that defendants cannot now raise the affirmative defense of exhaustion.  The check mark indicates that plaintiff can no longer pursue his grievance administratively because it was untimely, which by definition means that he has not properly exhausted administrative remedies under the PLRA.  See Woodford v. Ngo, 548 U.S. 81, 90 (2006) (explaining that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules").  Thus, plaintiff's arguments that his non-exhaustion should be excused based on estoppel fail.

Plaintiff's claims regarding special circumstances are also

unpersuasive.  According to plaintiff, his failure to exhaust
should be excused because he made a good faith attempt to comply
with grievance procedures that are vague and confusing.  He
explains that he thought the requirement that he seek an informal
resolution was satisfied because he made a verbal complaint
immediately after the altercation with Blue and was assured his
complaint would be investigated.  Pl.'s Aff. ¶ 6.  However, under
Hemphill, non-exhaustion is not excused when a prisoner tries in
good faith but fails to comply with the administrative process.
See Smith v. Kelly, 985 F. Supp. 2d 275, 289 (N.D.N.Y. 2013)
(noting that "substantial compliance" is not encompassed in the
three-part framework).

     In addition, that a grievance process may be "somewhat
complex" does not mean that special circumstances exist to excuse
non-exhaustion.  Amador v. Andrews, 655 F.3d 89, 103 (2d Cir.
2011).  Rather, courts in this Circuit have explained that
special circumstances exist when a plaintiff's failure to comply
with grievance procedures was based on a reasonable
interpretation of those procedures.  See, e.g., Wilson, 2015 WL
5455634, at *3 ("The courts have found special circumstances
where the failure to exhaust administrative remedies was caused
by a reasonable but erroneous interpretation of prison
regulations."); Kravitz v. Fischer, 9:12-CV-1011(LEK/TWD), 2014
WL 4199245, at *2 (N.D.N.Y. Aug. 22, 2014) ("Findings of special

circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion."); Rambert v. Mulkins, 11-CV-7421(KPF), 2014 WL 2440747, at *13 (S.D.N.Y. May 30, 2014) (noting that "absent an allegation by the inmate that his failure to exhaust was based on a reasonable, but erroneous interpretation of prison regulations, the special exception is generally inapplicable").  Administrative Directive 9.6 is quite clear that inmates must attempt to seek informal resolution, including via written request, and that a Level 1 grievance must include the Inmate Request Form or an explanation for why the form cannot be provided.  To interpret these regulations in any other way is not reasonable, especially because defendants indicate that plaintiff is familiar with the grievance process.  Defs.' Reply, ECF No. 139, at 5 n.2 (noting that defendants provided "hundreds of pages of documents in response to a subpoena for [p]laintiff's grievances," which included "a large number of grievances that [p]laintiff filed on other matters").  Plaintiff's arguments regarding special circumstances that excuse his non-exhaustion therefore fail.

Because plaintiff has failed to properly exhaust his administrative remedies regarding his excessive force claim, and that failure is not excused, summary judgment is granted in favor of defendant Blue.

B. Deliberate Indifference

Drs. Wright and Dr. Buchanan argue that they are entitled to summary judgment because plaintiff has not raised a triable issue of fact regarding deliberate indifference.  I agree that plaintiff has not presented evidence that would allow a reasonable jury to conclude that a constitutional violation occurred.[4]

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, plaintiff must point to evidence that would permit a jury to return a verdict in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether this standard is met, the evidence must be viewed in the light most favorable to the plaintiff.  Id. at 255.

A claim that the Eighth Amendment has been violated because prison officials acted with deliberate indifference to a serious medical need includes both an objective and a subjective component.  First, plaintiff must establish that the deprivation of adequate medical care was sufficiently serious from an

---

[4] Defendants Wright and Buchanan also assert that they are entitled to summary judgment on the basis of qualified immunity. Because plaintiff has not established a violation of his rights under the Eighth Amendment, there is no need to address the issue of qualified immunity.

objective perspective.  <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279
(2d Cir. 2006).  Second, plaintiff must show that, subjectively,
the prison official acted with a sufficiently culpable state of
mind.  <u>Id.</u> at 280.  This mental state requires that the official
acted or failed to act while he or she was "actually aware of a
substantial risk that serious inmate harm will result."  <u>Id.</u>
Importantly, this standard goes beyond mere negligence, and a
defendant's mental state may be nonculpable even if "objectively
unreasonable."  <u>Id.</u> at 281.

Plaintiff alleges that Dr. Wright acted with deliberate
indifference in his failure to provide pain medication and his
treatment of plaintiff's broken nose, nosebleeds, and alleged
loss of taste and smell.  However, viewing the evidence in the
light most favorable to the plaintiff, the record does not
support a finding that Dr. Wright violated plaintiff's
constitutional rights.

Regarding plaintiff's allegation that Dr. Wright refused to
prescribe pain medication, plaintiff has not rebutted the medical
records that show Motrin had already been prescribed for him when
he saw Dr. Wright following the altercation with Blue.  Defs.'
Reply, Ex. C, ECF No. 140-2.  In his affidavit, Dr. Wright states
that he knew he had already provided plaintiff with a
prescription for Motrin and that the prescription was still in
effect when plaintiff was examined.  <u>Id.</u>  The only evidence

plaintiff submits on the issue is his deposition testimony that Dr. Wright told him to "man up" and "take the pain," and that he does not remember whether he received any pain medication after he was treated by Dr. Wright.  Defs.' Reply, Ex. B, ECF No. 140-1, at 103-04.  Assuming Dr. Wright made the alleged comments, plaintiff's admittedly poor recollection, viewed in light of the medical record, is insufficient to raise a triable issue.

As to plaintiff's arguments that Dr. Wright acted with deliberate indifference regarding his treatment of plaintiff's broken nose, nosebleeds, and alleged loss of taste and smell, plaintiff has not put forward any evidence that suggests Dr. Wright acted with a sufficiently culpable state of mind.  Mere disagreements over medical judgment that do not amount to more than negligence on the doctor's part cannot establish a constitutional violation based on deliberate indifference.  See Williams v. Wright, 162 F. App'x 69, 71 (2d Cir. 2006) (noting that disagreement over a "disputed matter for medical judgment" cannot establish deliberate indifference).  Dr. Wright has submitted evidence, including medical records, test results, correspondence with other medical professionals, affidavits, and deposition testimony, that he acted in accordance with his informed medical judgment in treating plaintiff.  Even if Dr. Wright's actions or inactions regarding plaintiff's treatment were objectively unreasonable, that is not enough to support the

14

finding that a constitutional violation occurred.  <u>Salahuddin</u>,
467 F.3d at 282 (noting that "the mental-state inquiry" in
deliberate indifference cases "does not include an objective-
reasonableness test").  In the absence of evidence that suggests
Dr. Wright was aware of and ignored a substantial risk that
plaintiff would suffer serious harm, summary judgment on this
claim is granted in favor of defendant Wright.

Similarly, plaintiff has not submitted any evidence that
would allow a reasonable jury to conclude that the subjective
element of an Eighth Amendment violation has been satisfied with
respect to Dr. Buchanan.  Plaintiff argues that Dr. Buchanan, as
the head of the URC, repeatedly denied Dr. Wright's requests for
plaintiff to see an ENT specialist in a way that demonstrated
deliberate indifference.  However, the parties do not dispute
that, in response to Dr. Wright's requests, Dr. Buchanan sought
additional information, consulted with other members of the URC,
and adopted treatment plans that included observing plaintiff in
the infirmary for 24 hours and having him examined by a member of
the URC with ENT training.  This uncontested evidence shows that
Dr. Buchanan did not act with a sufficiently culpable state of
mind in denying Dr. Wright's requests, but instead acted in
accordance with his professional judgment.  <u>See</u> <u>Verley v. Wright</u>,
02-CV-1182(PKC), 2007 WL 2822199, at *12 (S.D.N.Y. Sept. 27,
2007) (holding that subjective prong of deliberate indifference

15

inquiry could not be satisfied when there was "substantial evidence in the record that [the doctor] reviewed plaintiff's file and made an independent medical determination").  Thus, Dr. Buchanan is entitled to summary judgment on this claim.

III. Conclusion

Accordingly, defendants' motion for summary judgment **[ECF No. 121]** is hereby granted.  The excessive force claim is dismissed without prejudice.  The deliberate indifference claims are dismissed with prejudice.  The Clerk may enter judgment in favor of the defendants dismissing the action.

So ordered this 30th day of September, 2015.


_____
/s/ RNC
Robert N. Chatigny
United States District Judge

16